```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
YOLY FARMERS CORPORATION,                                   :
                                                            :
                              Plaintiff,                    :    **MEMORANDUM DECISION**
                                                            :    **AND ORDER**
              - against -                                   :
                                                            :    15 Civ. 2774 (BMC)
DELTA AIR LINES, INC.,                                      :
                                                            :
                              Defendant.                    :
                                                            :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

This is a removed negligence action involving the international shipment of fresh vegetables from the Dominican Republic to New York. Plaintiff alleges that seven shipments of its fresh vegetables were negligently handled and damaged by defendant during their carriage by air from Santiago, Dominican Republic to John F. Kennedy Airport in New York, pursuant to seven air waybills.[1] Defendant removed this case pursuant to the Montreal Convention, successor to the Warsaw Convention, which governs "all international carriage of persons, baggage or cargo performed by aircraft for reward" that "originates in the territory of one of the States Party to the Convention and terminates in that of another." Convention for the Unification of Certain Rules for International Carriage by Air, art. 1, May 28, 1999, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) ("Montreal Convention"). Both the Dominican Republic and the United States are signatories to the Montreal Convention.

Presently before me is defendant's motion for partial summary judgment to dismiss plaintiff's claims as to four of the seven air waybills in their entirety, and to dismiss its claim as

---

[1] A waybill is "[a] document acknowledging the receipt of goods by a carrier or by the shipper's agent and the contract for the transportation of those goods." Black's Law Dictionary (9th ed. 2009). An air waybill is a "waybill for goods shipped by air." Id.

to one of the air waybills in part. Defendant argues that plaintiff's claims as to these waybills should be dismissed because plaintiff failed to submit a timely written complaint to it as required by Article 31 of the Montreal Convention. For the following reasons, defendant's motion is granted in part and denied in part.

## BACKGROUND

The material facts relevant to the instant motion are not in dispute. Of the seven air waybills at issue in the case, only the following five are pertinent to this motion: Air Waybills 006-3583-5634, 006-4064-6491, 006-3498-4180, 006-3574-3371, and 006-4064-6885. I will refer to each of them by their last four numbers for convenience.

Air Waybill 5634 was issued on January 13, 2014, pursuant to which defendant was to carry 231 pieces of plaintiff's cargo. All of the cargo, other than eight pieces, which were delayed in transit, was delivered to plaintiff the following day. The Delivery Slip and Receipt for this shipment, dated January 14, 2014, contains notations by plaintiff stating "damaged" and "shown to USDA inspector." On April 19, 2014, plaintiff submitted a Cargo Loss or Damage Claim form to defendant specifying damage to 108 pieces of cargo carried under this waybill.

Air Waybill 6491 was issued on March 29, 2014, pursuant to which defendant was to carry 244 pieces of plaintiff's cargo. All of the cargo, other than one piece lost in transit, was delivered to plaintiff the following day. The Delivery Slip and Receipt for this shipment, dated March 30, 2014, contains notations by plaintiff stating "beans very hot" and "shown to Bobby Jaeger and Anderson USDA inspector." On April 28, 2014, plaintiff submitted a Cargo Loss or Damage Claim form to defendant specifying damage to 101 pieces of cargo as well as the two lost pieces carried under this waybill.

Air Waybill 3371 was issued on December 10, 2013, pursuant to which defendant was to carry 217 pieces of plaintiff's cargo. All of the cargo was delivered to plaintiff on December 11, 2013. The Delivery Slip and Receipt for this shipment, dated December 18, 2013, contains notations by plaintiff stating "frozen" and "damaged by weather." Plaintiff explains that these notations were made on December 12, 2013. Plaintiff also sent a fax to defendant, dated January 6, 2014, notifying defendant of the damage suffered to cargo carried under this waybill.

Air Waybill 6885 was issued on April 12, 2014, pursuant to which defendant was to carry 259 pieces of plaintiff's cargo. There are two Delivery Slips and Receipts for this waybill. The first, dated April 13, 2014, indicates that 69 pieces of cargo were delivered on that day. The second, dated April 14, 2014, indicates that 188 pieces of cargo were delivered on that day. Two pieces of cargo were not delivered. On the Delivery Slip and Receipt dated April 14, 2014, plaintiff made notations stating "cargo damaged" and "reported to Bobby yesterday." On April 28, 2014, plaintiff submitted a Cargo Loss or Damage Claim form to defendant specifying damage to 115 pieces of cargo carried under this waybill.

Finally, Air Waybill 4180 was issued on April 28, 2013, pursuant to which defendant was to carry 279 pieces of plaintiff's cargo. All of the cargo was delivered to plaintiff over the following two days. There were two Delivery Slips and Receipts. There are no notations on either Delivery Slip and Receipt indicating any damage or problems with the cargo. However, plaintiff, in an affidavit submitted by one of its officers, recalls speaking to defendant's representative on April 28, 2013 about the damage to the cargo carried under this air waybill. On May 27, 2013, plaintiff submitted a Cargo Loss or Damage Claim form specifying damage to 20 pieces of cargo carried under this waybill.

**DISCUSSION**

**I.**

Summary judgment is appropriate where there are no genuine disputes of material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). There are no genuine factual issues when the moving party demonstrates, on the basis of the pleadings and admissible evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no reasonable jury could find in the non-movant's favor. See Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996). A party may not defeat a motion for summary judgment by relying on unsupported assertions, conjecture, or surmise. See Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).

**II.**

Article 31 of the Montreal Convention requires a shipper to provide timely written notice regarding any damage to its cargo within fourteen days after the cargo's arrival. See Zurich Am. Ins. Co. v. Lan Cargo S.A., No. 12 Civ. 9227, 2013 WL 7963678 (S.D.N.Y. Dec. 9, 2013). Specifically, Article 31(2) provides:

> [i]n the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within seven days form the date of receipt in the case of checked baggage and fourteen days from the date of receipt in the case of cargo. In the case of delay, the complaint must be made at the latest within twenty-one days from the date on which the baggage or cargo have been placed at his or her disposal.

Article 31(3) requires that every complaint "be made in writing and given or dispatched within the times aforesaid." Finally, Article 31(4) states that "[i]f no complaint is made within the times

aforesaid, no action shall lie against the carrier, save in the case of fraud on its part." As the text of the treaty makes clear, "[f]ailure to file a timely written notification of a claim acts as a complete bar to recovery." Lokken v. Fed. Exp. Corp., No. 99 Civ. 0585, 2000 WL 193121, at *5 (S.D.N.Y. Feb. 16, 2000).

Courts have recognized that where, as here, the provisions of the Montreal Convention are substantially similar to the equivalent provisions in the Warsaw Convention, the case law interpreting a particular provision of the Warsaw Convention applies with equal force to the Montreal Convention.[2] See Best v. BWIA W. Indies Airways Ltd., 581 F. Supp. 2d 359, 362 n.1 (E.D.N.Y. 2008) ("Because many of the provisions of the Montreal Convention are taken directly from the Warsaw Convention and the many amendments thereto, the case law regarding a particular provision of the Warsaw treaty applies with equal force regarding its counterpart in the Montreal treaty."); see also Baah v. Virgin Atl. Airways Ltd., 473 F. Supp. 2d 591, 596 (S.D.N.Y. 2007) ("Consistent with that interpretation, this Court has previously relied on cases interpreting a provision of the Warsaw Convention where the equivalent provision in the Montreal Convention was substantively the same.").

The purpose of Article 31 is to "place the carrier on notice that it may be held liable for reimbursement and to provide it with an opportunity to investigate claims." Zurich Am. Ins. Co.

---

[2] The Warsaw Convention's parallel provision is found in Article 26. See Convention for the Unification of Certain Rules Relating to International Carriage by Air, art.26, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934). Article 26(2) provides:

> In the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within three days from the date of receipt in the case of luggage and seven days from the date of receipt in the case of goods. In the case of delay the complaint must be made at the latest within fourteen days from the date on which the luggage or goods have been placed at his disposal.

Article 26(3) states that "every complaint must be made in writing upon the document of transportation or by separate notice in writing dispatched within the times aforesaid." Article 26(4) provides, "[f]ailing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on its part." Although the deadlines are different, these provisions are substantially similar to those found in the Montreal Convention.

5

v. Lan Cargo S.A., No. 12 Civ. 9227, 2013 WL 7963678, at *2 (S.D.N.Y. Dec. 9, 2013); see also Lokken, 2000 WL 193121, at *5 (explaining that Article 31 is "designed to insure prompt notification to carriers of their exposure to liability"). The notice requirements are "not intended to burden the party bearing the risk of loss with onerous hyper-technical hurdles in order to make a claim for damages," Watkins Syndicate at Lloyd's of London v. Tampa Airlines, S.A., No. 03 Civ. 5937, 2004 WL 2290501, at *3 (S.D.N.Y. Oct. 8, 2004) (citing Sony Corp. v. BDP Int'l, Inc., No 96 Civ. 8934, 1999 WL 681497 (S.D.N.Y. Sept. 1, 1999). However, "actual notice of the damage may not substitute for formal written notice." Moses v. Air Afrique, No. 99 Civ. 541, 2000 WL 306853, at *7 (E.D.N.Y. Mar. 21, 2000). Furthermore, notations on delivery receipts may satisfy the Montreal Convention's notice requirements. See, e.g., Denby v. Seabord World Airlines, Inc., 737 F.2d 172, 184 (2d Cir. 1984) (stating, in dicta, that if the plaintiff's complaint were made on the "Pick Up Order and Tally Form, this would constitute 'separate notice in writing'"); Highlands Ins. Co. v. Trinidad & Tobago (BWIA Int'l) Airways Corp., 739 F.2d 536, 538 n.3 (11th Cir. 1984) (explaining, in dicta, that "[a] notation of damage to the goods on the delivery receipt would have fulfilled the requirements of article 26(3) [of the Warsaw Convention]"); Pesquera Navimar, S.A. v. Ecuatoriana De Aviacion, 680 F. Supp. 1526, 1528 (S.D. Fla. 1988) (holding that a notation on the air waybill was sufficient to satisfy the notice requirements of the Warsaw Convention).

### III.

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." Medellin v. Texas, 552 U.S. 491, 506, 128 S. Ct. 1346, 1357 (2008). "There is nothing in the text of the Montreal Convention that requires an express and definite statement that the shipper intends to hold the carrier liable." UPS Supply Chain Sols., Inc. v. American Airlines, Inc., 646

F. Supp. 2d 1011, 1014 (N.D. Ill. 2009). Accordingly, I find that plaintiff's notations on the Delivery Slips and Receipts for Air Waybills 5634, 3371, and 6885, which all indicate that the cargo carried under these waybills was, *inter alia*, "damaged," provided defendant with sufficient notice that it may be held liable for plaintiff's claims and gave defendant an opportunity to investigate the claims.[3] See Zurich, 2013 WL 7963678, at *2; see also Highlands 39 F.2d at 538 n.3 (explaining, in dicta, that "[a] notation of damage to the goods on the delivery receipt would have fulfilled the requirements of article 26(3) [of the Warsaw Convention]"). Therefore, defendant's motion is denied as to these claims.

Although there is case law suggesting that the treaty does contain an "express and definite statement" requirement, see Denby v. Seabord World Airlines, Inc., 575 F. Supp. 1134, 1144 (E.D.N.Y. 1983), rev'd on other grounds, 737 F.2d 172 (2d Cir. 1984), the Second Circuit has never expressly held this to be the case. In Denby, the defendant was supposed to deliver forty items to the plaintiff. However, it delivered only four items. The consignee orally reported that the 36 items were missing and made a notation "4" on the delivery receipt and customs paperwork. The district court granted the defendant's motion for summary judgment on the issue of written and timely notice, stating that "[f]ormal written notice [as contrasted with actual notice] provides the carrier not merely with an indication that a shipment has been damaged, but with an express and definite statement of the shipper's intention to hold the carrier liable." Id. at 1144.

The Second Circuit, in reversing the district court's opinion, expressly deferred ruling on the notice issue because the factual record was incomplete. Specifically, the plaintiff alleged that he was dissuaded from making a notation on "Pick Up Order and Tally Form," so the Second

---

[3] Both parties acknowledge that plaintiff's further written complaints – the Cargo Loss or Damage Claim forms, and the fax in connection with Air Waybill 3371 – were untimely.

Circuit deferred ruling on this issue until there was testimony about what the plaintiff would have written on the form. 737 F.2d at 185. Nevertheless, the Court noted that "a notice that nine-tenths of a designated shipment made by an air waybill were missing . . . would be sufficient to put a carrier on notice to investigate and . . . also to give notice that a claim would be made." Id. at 185. Accordingly, if a notation that indicated that most of a shipment was missing would be sufficient to put a carrier on notice to investigate and to give notice that a claim would be made, a notation that goods were damaged and/or damaged by the weather, as plaintiff has provided in this case, is also sufficient.

Likewise, I am persuaded that this case is similar to Pesquera Navimar, S.A. v. Ecuatoriana De Aviacion, 680 F. Supp. 1526, and UPS Supply Chain Solutions, Inc. v. American Airlines, Inc., 646 F. Supp. 2d 1011. In Pesquera, the defendant contracted to carry frozen shrimp for the plaintiff. Plaintiff's agent picked up the goods and made a notation on the air waybill that stated, "415 Boxes sof [sic] & wet . . . temp + 36 degrees Catalina not responsible for damages or temp." 680 F. Supp. at 1527. The court held that this notation was sufficient notice under the Warsaw Convention because it stated that

> boxes of frozen shrimp arrived soft and wet, at a temperature of +36 degrees, and that the agent is not responsible for the damages is notice that the shrimp arrived in a less than perfect condition. Since the purpose of the notice requirement is just that, to give notice, this notation is sufficient notice.

Id. Again, plaintiff's notations that the vegetables were damaged provided defendant with notice that they arrived in "a less than perfect condition."

In UPS, the defendant agreed to ship perishable cargo, fish oil, for the plaintiff. The shipment arrived as scheduled, but since it was not refrigerated as required by the air waybill, it spoiled. The plaintiff rejected the shipment and, within fourteen days, sent a letter to the defendant stating that it was refusing the shipment because it spoiled because it was not

refrigerated and was kept in temperatures as high as 80 degrees. The letter also indicated that the product was valued at over $80,000. The court held that the plaintiff's letter was sufficient because it "specifically referred to damage," and as a result, "was sufficient to place the carrier on notice that the shipment had been damaged." 646 F. Supp. 2d at 1015. "Under the terms of the Montreal Convention, that is all that is required."

Admittedly, the notifications in both <u>Pesquera</u> and <u>UPS</u> provide slightly more information than the notations at issue here. However, as both of those courts held, all the Montreal Convention requires is that the carrier be placed on notice that the shipment has been damaged. Plaintiff's notations on the Delivery Slips and Receipts relating to these three air waybills does just that.

Defendant's reliance on <u>Oriental Ins. Co., Ltd. v. Bax Global, Inc.</u>, No. 08 C 4936, 2009 WL 229668, at *1 (N.D. Ill. Jan. 28, 2009), is misplaced. In that case, the court found there was no timely written complaint where there was only a notation "5 BOXES WET" on a document titled "Notification of Transfer." The plaintiff sent a subrogation letter to the carrier stating that it would look to be reimbursed for the cargo. The court explained that the subrogation letter did not "specify the nature or amount of damages or even whether the claim was for loss or for damage." <u>Id.</u> at *3. Thus, unlike the instant case, the letter and notation in <u>Oriental</u> does not mention that the cargo was in any way damaged.

For these reasons, defendant's motion is granted with respect to Air Waybills 6491 and 4180. Unlike the notations described above, plaintiff's notation on Air Waybill 6491 did not indicate that the goods were damaged. Instead, plaintiff only wrote "beans very hot" and "shown to Bobby Jaeger and Anderson USDA inspector." Plaintiff, implicitly conceding that these statements are insufficient, asks the Court to "equitably conclude" that its notations are adequate.

9

But this is a legal issue and there is no basis for applying equitable principles. Moreover, even if I had such discretion, I could see no basis for exercising it in a commercial transaction between merchants. Plaintiff clearly understood that it needed to indicate that its goods were damaged, if in fact they were, because it had done so for all of the waybills described above. Its failure to do so in this instance is unexplained.

Finally, there is no dispute that plaintiff did not submit any written complaint with respect to Air Waybill 4180. It did not make any notations on the Delivery Slips and Receipts that would put defendant on notice that the goods were damaged. Instead, plaintiff maintains that it spoke with defendant's representative and indicated that the cargo was damaged, and that defendant's representative possibly wrote something down to that effect. Plaintiff argues that it has not yet had the benefit of discovery to determine whether defendant made a written record of this conversation. However, even if defendant's representative created a written record of plaintiff's oral complaint, plaintiff still did not provide a written complaint for this waybill as required by Article 31(3). Defendant's records would not change that fact.

## IV.

Accordingly, and for the foregoing reasons, defendant's [23] motion for partial summary judgment is granted in part and denied in part.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
July 27, 2015

10